UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

NICHOLAS MAESTAS,

        Plaintiff,

v.

ROBERT LEGRAND, *et al.*

        Defendants.

3:10-cv-00585-HDM-VPC

**REPORT AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE**

December 8, 2011

    This Report and Recommendation is made to the Honorable Howard D. McKibben, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4. Defendants filed a motion to dismiss (#22),[1] plaintiff opposed (#25), and defendants replied (#27).[2] The court has thoroughly reviewed the record and recommends defendants' motion to dismiss (#22) be granted.

## I. HISTORY & PROCEDURAL BACKGROUND

    Plaintiff Nicholas Maestas ("plaintiff"), a *pro se* inmate, is currently incarcerated at Lovelock Correctional Center ("LCC") in the custody of the Nevada Department of Corrections ("NDOC") (#13). Plaintiff brings his second amended complaint pursuant to 42 U.S.C. § 1983, alleging violations of his First and Fourteenth Amendment rights. *Id*.

    Pursuant to 28 U.S.C. § 1915A, the court screened the complaint and permitted certain claims to proceed (#12).[3] The claims which are the subject of this motion are: (1) count I First

---

[1] Refers to the court's docket number.

[2] Defendants' motion to dismiss was fully briefed pursuant to Local Rule 7-2. Nevertheless, plaintiff subsequently filed a reply to defendants' reply (#30). Defendants moved to strike (#32) this document. Plaintiff responded to the motion to strike by withdrawing this document (#34). The court ordered plaintiff's reply (#30) withdrawn in a minute order (#36).

[3] After screening, the court permitted the following claims to proceed: (1) count I First Amendment retaliation claim against correctional officer Bennett; (2) count II First Amendment retaliation claim against caseworker Harkreader and correctional officers Widmar and DeGoyler; (3) count IV First Amendment retaliation claim against correctional officers Olivas, Widmar, DeGoyler, and Bennett and

1 Amendment retaliation claim against correctional officer Bennett; (2) count II First Amendment retaliation claim against caseworker Harkreader and correctional officer Widmar; and (3) count V First Amendment retaliation claim against correctional officer Widmar.

In count I, plaintiff alleges that on September 24, 2009, he was playing basketball on the "yard," and "nearly collid[ed]" with defendants Widmar and Bennett (#13, p. 4).[4] Plaintiff claims defendant Bennett "harassed [plaintiff] about not yielding to staff." *Id*. Plaintiff submitted a grievance regarding the incident and claims that in retaliation for submitting this grievance, defendant Bennett issued "misconduct reports" against plaintiff and interfered with plaintiff's receipt of a package. *Id*. at 4, 4A.

In count II, plaintiff alleges that in December 2009, defendant Harkreader attempted to persuade plaintiff to "drop his grievances." *Id*. at 5. Plaintiff further claims that on February 2, 2010, correctional officer DeGoyler observed that plaintiff's cell mate, inmate Cox, was in the cell while plaintiff used the toilet. *Id*. Plaintiff asserts defendants referred him for a Prison Rape Elimination Act ("PREA") investigation, which resulted in his placement in administrative segregation. *Id*. Plaintiff alleges this was in retaliation "for his exercise of the inmate grievance process." *Id*. Plaintiff names defendants Harkreader and Widmar in count II and alleges defendants acted "in concert with eachother [sic]." *Id*.[5]

In count V, plaintiff alleges that on April 2, 2010, he attended a hearing where defendant Widmar "retaliated against [him] by asking [him] if he wanted to work in the law library to perfect his lawsuit (which was against Widmar) then persuading the FCC[6] to keep [him] in ADSEG explaining that he (Widmar) was reviving the PREA (Prison Rape Elimination Act)

---

caseworker Harkreader; (4) count V First Amendment retaliation claim against correctional officer Widmar; (5) count VI First Amendment retaliation claim against correctional officer Widmar; (6) count VII Fourteenth Amendment equal protection claim against correctional officer Widmar; and (7) count VIII Fourteenth Amendment due process claim against correctional officer Widmar (#12).

   [4] The page numbers utilize the numbering at the bottom of the page of plaintiff's complaint.

   [5] Plaintiff also names defendant DeGoyler in count II; however, the Attorney General's Office has not accepted service for defendant DeGoyler (#22, p. 2).

   [6] "FCC" refers to the prison's full classification committee.

referral/investigation (that Widmar and Harkreader began on 2/2/10)." *Id*. at 8. Plaintiff claims defendant Widmar's statement resulted in plaintiff's continued placement in administrative segregation. *Id*. In its screening order, the court construed count V as "a continuation of the February 2, 2010 retaliatory act of placing plaintiff in administrative segregation based on investigation [under the] PREA" (#12, p. 7).

Defendants Bennett, Harkreader, Widmar, and Olivas ("defendants") filed a motion to partially dismiss plaintiff's complaint for a failure to exhaust administrative remedies pursuant to the Prison Litigation Reform Act ("PLRA") and Administrative Regulation ("AR") 740 (#22).[7] Defendant Bennett moves to dismiss part of count I because he claims that plaintiff filed a grievance, which addresses the incident on the basketball court, but does not grieve retaliation in the form of defendant Bennett's alleged interference with plaintiff's receipt of a package. *Id*. at 4-5. Defendant Bennett also asserts that this grievance was untimely. *Id*. at 4.

Defendants Harkreader and Widmar move to dismiss count II and argue plaintiff failed to exhaust his administrative remedies with respect to his claim that defendants Harkreader and Widmar retaliated against him, because his only grievance regarding this claim was rejected as procedurally improper, and plaintiff abandoned the grievance. *Id*. at 5. Finally, defendant Widmar moves to dismiss count V and argues that this allegation against defendant Widmar is a continuation of the alleged retaliation in count II, a claim which plaintiff failed to exhaust. *Id*. at 6.

To support these assertions, defendants attach and authenticate the applicable versions of AR 740 and plaintiff's inmate grievance history (#22, Exs. A, B).[8] Defendants also attach copies of plaintiff's actual grievances for select grievances. *Id*. at Exs. C, D, E, F. The court reviewed plaintiff's inmate grievance history and found the following relevant grievances:

<u>Count I Retaliation Claim: Defendant Bennett</u>
(1) 2006-28-82885: Informal, first, and second level grievance regarding an incident which occurred on September 24, 2009 (#22, Ex. C). Plaintiff claims that he was playing basketball on the "yard" when defendant Bennett "collid[ed]" with plaintiff. Plaintiff claims

---

[7] Defendant Olivas is included in defendants' motion to dismiss; however, none of the claims which defendants move to dismiss pertain to defendant Olivas (#22).

[8] Defendants attach and authenticate AR 740, effective January 5, 2004 and the subsequent version effective November 23, 2009 (#22, Ex. A).

3

    defendant Bennett "was attempting to provoke [him] into a fight." *Id*.

    (2) 2006-28-84437: Informal, first, and second level grievance regarding alleged retaliation by defendant Bennett in the form of "2 misconduct reports" (#22, Ex. D). Plaintiff claims that defendant Bennett retaliated against plaintiff after plaintiff filed grievance 2006-28-82885 about defendant Bennett. *Id*.

<u>Count II Retaliation Claim: Defendants Harkreader and Widmar</u>
    (3) 2006-28-96604: Informal level grievance regarding plaintiff's placement in administrative segregation (#22, Ex. E; Ex. B, pp. 22-23). Plaintiff alleges that defendants referred him for a PREA investigation in retaliation for plaintiff's filing of grievances. *Id*. Plaintiff refers to defendants Harkreader and Widmar in this grievance. *Id*. NDOC rejected plaintiff's first level grievances for procedural defects and plaintiff abandoned the grievance at that time (#22, Ex. B, p. 22).

Plaintiff opposes defendants' claims and argues that he exhausted his available administrative remedies and that "those claims defense claims were not exhausted were due to interference by the LCC administration" (#25, p. 1). Plaintiff claims Tara Carpenter "blocked" his grievances due to procedural defects in the grievances. *Id*. at 4-5. Plaintiff states his inability to exhaust certain claims was "beyond [his] control." *Id*. at 7. Plaintiff argues his grievances should "be considered as annexation" to each other, and that one exhausted grievance satisfies the exhaustion requirement for other unexhausted grievances. *Id*. at 6. In support of his arguments, plaintiff attaches and authenticates three grievances: (1) 2006-28-96604; (2) 2006-28-96399; and (3) 2006-28-99121. *Id.* at Exs. D, J, O.

In their reply, defendants maintain that plaintiff failed to exhaust his administrative remedies for part of his claim in count I, and for his claims in counts II and V (#27). Defendants assert that plaintiff's excuses for non-exhaustion are without merit. *Id*. at 2.

The court notes that the plaintiff is proceeding *pro se*. "In civil cases where the plaintiff appears *pro se*, the court must construe the pleadings liberally and must afford plaintiff the benefit of any doubt." *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988); *see also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

## II. DISCUSSION & ANALYSIS

**A.**    **Discussion**

    Failure to exhaust is an affirmative defense under the PLRA rather than a jurisdictional requirement, and defendants bear the burden of raising and proving that the plaintiff has not

4

1  exhausted. *Jones v. Bock*, 549 U.S. 199, 216 (2007); *Wyatt v. Terhune*, 315 F.3d 1108, 1117 n.9 (9th
2  Cir. 2003), *cert. denied*, 540 U.S. 810 (2003).  Inmates are not required to specifically plead or
3  demonstrate exhaustion in their complaints; rather, it is the defendant's responsibility to raise the
4  issue in a responsive pleading.  *Jones*, 549 U.S. at 216.

5  Failure to exhaust is treated as a matter in abatement, not going to the merits of the claim,
6  and is properly raised in an unenumerated Rule 12(b) motion.  *Wyatt*, 315 F.3d at 1119.  The court
7  may look beyond the pleadings to decide disputed issues of fact without converting the motion into
8  one for summary judgment; however, "if the district court concludes that the prisoner has not
9  exhausted nonjudicial remedies, the proper remedy is dismissal of the claim without prejudice." *Id.*
10 at 1119-20*, as noted in O'Guinn v. Lovelock Corr. Ctr.*, 502 F.3d 1056, 1059 (9th Cir. 2007); *see*
11 *also Rizta v. Int'l Longshoremen's & Warehousemen's Union*, 837 F.2d 365 (9th Cir. 1988)
12 ("[F]ailure to exhaust nonjudicial remedies should be raised in a motion to dismiss, or be treated as
13 such if raised in a motion for summary judgment.").

14 **1.    Prison Litigation Reform Act of 1996**

15 The PLRA amended 42 U.S.C. § 1997e to provide that "[n]o action shall be brought with
16 respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner
17 confined in any jail, prison, or other correctional facility until such administrative remedies as are
18 available are exhausted." 42 U.S.C. § 1997e(a).

19 Although once within the discretion of the district court, the exhaustion of administrative
20 remedies is now mandatory.  *Booth v. C.O. Churner*, 532 U.S. 731 (2001).  Those remedies "need
21 not meet federal standards, nor must they be 'plain, speedy, and effective.'" *Porter v. Nussle*, 534
22 U.S. 516, 524 (2002) (citing *Booth*, 532 U.S. at 739-40 n.5).  Even when the prisoner seeks remedies
23 not available in the administrative proceedings, notably money damages, exhaustion is still required
24 prior to filing suit.  *Booth*, 532 U.S. at 741.  Recent case law demonstrates that the Supreme Court
25 has strictly construed section 1997e(a).  *Id.* at 741 n.6 ("We will not read futility or other exceptions
26 into statutory exhaustion requirements where Congress has provided otherwise.").

27 Plaintiffs must properly exhaust nonjudicial remedies as a precondition to bringing suit.  The
28 PLRA requires "proper exhaustion," meaning that the prisoner must use "all steps the agency holds

out, and doing so *properly* (so that the agency addresses the merits)." *Woodford v. Ngo*, 548 U.S. 81, 89 (2006). Requiring exhaustion prior to filing suit furthers the congressional objectives of the PLRA as set forth in *Porter v. Nussle*, 534 U.S. at 524-25.

### 2. NDOC Procedures

"Applicable procedural rules [for proper exhaustion] are defined not by the PLRA, but by the prison grievance process itself." *Jones*, 549 U.S. at 218.

The NDOC grievance procedure is governed by AR 740 (#22, Ex. A, pp. 1-20; 39-50).[9] Defendants attach to their motion the relevant versions of AR 740, which were in effect at the time plaintiff filed his grievance. *Id.* In order for plaintiff to exhaust available remedies at the time of his injury, AR 740 requires the following: (1) an informal review level, which "shall be reviewed and responded to by the inmate assigned caseworker" in consultation with other appropriate staff; (2) a first level formal grievance, which "shall be reviewed and responded to by the Warden"; and (3) a second level grievance, which "shall be reviewed and responded to by either the Assistant Director of Operations, Assistant Director of Support Services, Offender Management Administrator, Medical Director, or Correctional Programs Administrator." *Id.* at 10; 42-45.

Once received, NDOC logs informal grievances into a tracking system. *Id.* at 13. Under 740, effective 2004, the caseworker assigned to the grievance will provide the inmate with a response within twenty-five days, unless more time is required to conduct further investigation. *Id.* at 14. Under AR 740, effective November 2009, the time limit for a response to the informal grievance is forty-five days. *Id*. at 44. If the inmate is not satisfied by NDOC's response to his informal grievance, he may appeal the decision within five days by filing a first level grievance. *Id*. at 15; 44. Under AR 740, effective January 2004, NDOC will provide a response within twenty days of receipt of the first level grievance. *Id*. at 16. Under AR 740, effective November 2009, the time limit for a response to the first level grievance is forty-five days. *Id*. at 45. If the first level grievance does not comply with procedural guidelines, the grievance is returned to the inmate with instructions for proper filing. *Id*. at 16; 50. Finally, under AR 740, effective 2004, if the inmate is not satisfied with

---

[9] The first citation number refers to AR 740, effective January 5, 2004. The second set refers to AR 740, effective November 23, 2009.

6

the first level grievance outcome, he may file a second level grievance, to which the NDOC will respond within twenty days. *Id*. at 17. Under AR 740, effective 2009, the inmate may file a second level grievance, to which NDOC will respond within sixty days. *Id*. at 45. Upon completion of the grievance process, inmates may pursue civil rights litigation in federal court.

**B.     Analysis**

     **1.     Exhaustion of Plaintiff's Claim that Defendant Bennett Retaliated Against Him in Count I**

Defendants argue that to the extent count I alleges retaliation by interference with plaintiff's receipt of a package, it must be partially dismissed for plaintiff's failure to exhaust administrative remedies (#22, p. 5). Defendants contend the only proper grievance plaintiff filed which relates to count I is grievance 2006-28-84437. *Id*. at Ex. D. The court agrees. In this grievance, plaintiff alleges that defendant Bennett filed two misconduct reports against plaintiff in retaliation for plaintiff filing grievance 2006-28-82885. *Id*. Plaintiff exhausted his administrative remedies in grievance 2006-28-84437; however, plaintiff failed to grieve any alleged act of retaliation related to his receipt of a package. *Id*.

Plaintiff asserts that he filed grievance 2006-28-89320 which relates to defendant Bennett's retaliation against plaintiff when defendant Bennett interfered with plaintiff's receipt of a package (#25, p. 4). However, review of this grievance reveals that plaintiff failed to allege that defendant Bennett interfered with plaintiff's package in *retaliation* against plaintiff (#22, Ex. B, p. 28). Moreover, plaintiff did not file a first or second level grievance in 2006-28-89320. *Id*.

Plaintiff failed to exhaust his administrative remedies with respect to his claim in count I that defendant Bennett retaliated against plaintiff when he interfered with plaintiff's receipt of a package.[10] Therefore, this portion of count I should be dismissed without prejudice for failure to exhaust administrative remedies pursuant to the PLRA. The court recommends that defendants' motion to partially dismiss count I (#22) be granted.

---

[10] The court notes that plaintiff also alleges in count I that defendant Bennett retaliated against plaintiff by issuing a disciplinary charge against plaintiff, which defendants do not move to dismiss (#13, p. 4).

### 2. Exhaustion of Plaintiff's Claim in Count II that Defendants Harkreader and Widmar Retaliated Against Him

Defendants argue plaintiff failed to properly exhaust his administrative remedies with respect to his claim that defendants Harkreader and Widmar retaliated against plaintiff by using the PREA investigation to place plaintiff in administrative segregation (#22, p. 5). Plaintiff submitted grievance 2009-28-96604, alleging that defendants Harkreader, Widmar, and correctional officer DeGoyler referred plaintiff for a PREA investigation and placed him in administrative segregation in retaliation for plaintiff's filing of grievances. *Id*. at Ex. E. However, review of both defendants' and plaintiff's exhibits reveals that plaintiff failed to properly exhaust his administrative remedies in grievance 2009-28-96604 (#22, Ex. B, pp. 22-23, Ex. E; #25, Ex. D). Plaintiff attempted to file two first level grievances, which NDOC rejected due to procedural defects. *Id*. NDOC rejected one of plaintiff's first level grievances because the grievance raised an issue previously raised in an earlier grievance (#22, Ex. B, p. 23). NDOC rejected another one of plaintiff's first level grievances "due to the fact that all of these issue [sic] should have been address[ed] at [his] disciplinary appeal." *Id*. Plaintiff abandoned grievance 2009-28-96604.

In his opposition, plaintiff admits that he did not exhaust his administrative remedies in 2009-28-96604; however, he argues that Tara Carpenter "blocked [his] grievance" and that plaintiff "was incapable of exhausting" due to Carpenter's "willful interference" (#25, p. 5). Simply stating that Ms. Carpenter denied plaintiff's grievances because they were procedurally improper is not an excuse for plaintiff's failure to exhaust. Plaintiff could have submitted a proper grievance addressing Ms. Carpenter's concerns. Moreover, in order to satisfy the exhaustion requirement of the PLRA, "proper exhaustion of administrative remedies is necessary." *Woodford*, 548 U.S. at 84. This requires an inmate to comply with an agency's deadlines and "other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id*. at 90-91.

Plaintiff's argument that he is somehow excused from the exhaustion requirement and that he could not grieve further are unconvincing. The Ninth Circuit discussed possible exceptions to the PLRA's exhaustion requirement in *Nunez v. Duncan*, 591 F.3d 1217 (9th Cir. 2010). These

8

include: the unavailability of administrative procedures obstruction of attempts to exhaust and preventing exhaustion by failing to follow grievance procedures. *Id*. None of the exceptions to exhaustion applies here. Plaintiff has not argued that the grievance system was unavailable to him. He has not effectively demonstrated that NDOC officials obstructed his attempts to exhaust, nor does he assert that he was prevented from exhausting because grievance procedures were not followed. Plaintiff has failed to assert any recognized exception to the exhaustion requirement. Further, a prisoner's concession to nonexhaustion is a valid ground for dismissal, so long as no exception to exhaustion applies. *See Wyatt*, 315 F.3d at 1119. Plaintiff concedes that he did not exhaust grievance 2009-28-96604 (#25, p. 5). Plaintiff's argument that grievance 2009-28-96604 should be considered part of grievance 2006-28-99121, thus proving exhaustion, is without merit. *Id*. at p. 6. These are two separate grievances which address different issues and cannot be treated as one grievance for purposes of exhaustion. In grievance 2006-28-99121, plaintiff states that he is grieving the denial of his grievances by Ms. Carpenter, and Ms. Carpenter's "chilling [his] right to petition the government" (#25, p. 4, Ex. O).[11] Because plaintiff failed to exhaust his administrative remedies, the court recommends that defendants' motion to dismiss count II (#22) be granted and that count II be dismissed without prejudice.

### 3. Exhaustion of Plaintiff's Claim in Count V that Defendant Widmar Continued to Retaliate Against Him

Count V is directly related to plaintiff's retaliation claim in count II against defendant Widmar (#13, pp. 5, 8). Pursuant to the court's screening order, the allegations of retaliation in count V are a "continuation of the February 2, 2010, retaliatory act of placing plaintiff in

---

[11] Review of grievance 2006-28-99121, which plaintiff states he submitted after NDOC denied 2009-28-96604 for procedural reasons, reveals that this grievance relates to plaintiff's complaints about Ms. Carpenter (#22, Ex. B, p. 20-21; #25, Ex. O). Further, plaintiff states in his opposition that he "filed GR # 2006-28-99121 which charged Carpenter with chilling Maestas's right to petition the government" (#25, p. 4). Defendants do not attach the actual grievance for 2006-28-99121; however, the court's review of plaintiff's attachment of this grievance reveals that it is not relevant to plaintiff's claims in count I, II, or V (#25, Ex. O). Additionally, plaintiff submitted grievance 2006-28-96399, in which he appealed his disciplinary charge (#22, Ex. F). While plaintiff mentions that his disciplinary charge is evidence of retaliation, the charge at issue is for attempting to contact his former cell mate by phone. *Id*. The disciplinary hearing did not involve the PREA investigation and this grievance does not allege that the PREA investigation itself was retaliatory.

administrative segregation based on investigation [under the] PREA" (#12, p. 7). Because plaintiff failed to exhaust his administrative remedies with respect to his retaliation claim against defendant Widmar in count II, he also failed to exhaust his administrative remedies in count V. Moreover, even if the court construes count V as wholly separate from the allegations in count II, plaintiff failed to submit any grievances referring to defendant Widmar's alleged statements during plaintiff's hearing. The court recommends defendants' motion to dismiss count V be granted and that count V be dismissed without prejudice.

### III. CONCLUSION

Based on the foregoing and for good cause appearing, the court recommends that defendants' motion to dismiss (#22) be **GRANTED** because defendants proved that plaintiff failed to exhaust his administrative remedies as to certain claims and plaintiff's attached grievance forms did not adequately rebut defendants' evidence. Plaintiff failed to exhaust his administrative remedies as to the portion of his claim in count I that defendant Bennett retaliated against him by interfering with plaintiff's receipt of a package, and the court recommends that only that portion of count I be **DISMISSED without prejudice**. The court further recommends that count II against defendants Harkreader and Widmar, and count V against defendant Widmar be **DISMISSED without prejudice.** The parties are advised:

1. Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

### IV. RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that defendants' motion to dismiss (#22) be **GRANTED** and that the following claims be dismissed as follows:

(1) Plaintiff's claim in count I that defendant Bennett retaliated against plaintiff when he

interfered with plaintiff's receipt of a package should be **DISMISSED**; therefore, only that portion of count I should be **DISMISSED without prejudice**; and

(2) Count II against defendants Harkreader and Widmar should be **DISMISSED without prejudice**; and

(3) Count V against defendant Widmar should be **DISMISSED without prejudice**.

**DATED**: December 8, 2011.

_____
**UNITED STATES MAGISTRATE JUDGE**